IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04 12495 (DPW) |
| ) | |
| GLOBAL COMPANIES, L.L.C. and ) | |
| GLOBAL PETROLEUM CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF THE UNOPPOSED MOTION
OF THE UNITED STATES TO ENTER THE CONSENT DECREE**

Plaintiff, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), submits this Memorandum in support of its Unopposed Motion to Enter the Consent Decree. The United States respectfully requests that the Court sign the proposed Consent Decree between the United States and the Defendants, Global Companies, L.L.C. and Global Petroleum Corporation (collectively "Global"), and enter it as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**DISCUSSION**

**I.     Complaint**

The United States filed the Complaint in this action on November 29, 2004, the same day on which it lodged the proposed Consent Decree. In the Complaint, the United States sought civil penalties against Global for violations of Section 211 of the Clean Air Act, 42 U.S.C. § 7545, and federal regulations promulgated thereunder, associated with Global's gasoline importing and blending operations.

**II.     Consent Decree**

The Consent Decree provides for Global to pay a civil penalty of $500,000 and to implement a three-year Compliance Assurance Program. The goal of the Compliance Assurance Program is to ensure future compliance with EPA's requirements for importing and blending reformulated and conventional gasoline.

### III.   Notice and Comment

On November 29, 2004, the United States lodged the proposed Consent Decree with the Court. Notice of the lodging of the Consent Decree, providing the opportunity to comment thereon, was published in the Federal Register on December 10, 2004. *See* 69 Fed. Reg. 71847. The requisite thirty-day public comment period has expired and the United States received no comments during the public comment period.

### IV.   Standard of Review

There is a strong public policy favoring settlements "particularly in very complex and technical regulatory [cases]." *United States v. CUCCo v. Puerto Rico Electric Power Authority ("PREPA")*, 204 F.3d 275, 280 (1st Cir. 2000). In fact, "the presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained or oriented in the field." *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd,* 899 F.2d 79 (1st Cir. 1990); *accord PREPA*, 204 F.3d at 280 (stating that the policy in favor of settlements has particular "bite" when dealing with a government actor who is "'committed to the protection of the public interest' and specially trained and oriented in the field" (quoting *Cannons Eng'g Corp.*, 899 F.2d at 84)).

Prior to a Court accepting a consent decree, it must determine that the decree is "fair,

reasonable, and consistent with environmental goals." *PREPA*, 204 F.3d at 280. A consent decree is fair in the eyes of the Court if the settlement occurred at arm's length with good faith bargaining. *Id.* at 281. It is not the Court's duty to determine whether the decree was the "best possible settlement that could have been obtained." *Cannons Eng'g Corp.*, 720 F. Supp. at 1036. In determining whether a decree is reasonable and consistent with environmental goals, the Court looks to see if each party had an attorney who was able to evaluate "the strengths and weaknesses of the . . . case." *Id.* When dealing with environmental cases, the "EPA's expertise must be given the benefit of the doubt when weighing substantive fairness" with the decree's purpose. *PREPA*, 204 F. 3d at 281.

In this case, the parties spent a number of months negotiating the terms of the settlement and the language of the Consent Decree. During these negotiations, Global was well represented by counsel. The settlement embodied in the Consent Decree is consistent with the Clean Air Act's environmental goals in that it not only will result in a penalty for Global's past violations of the Act, but also will require Global to implement measures to protect the environment by preventing similar violations in the future. The United States has satisfied the notice and comment requirements of 28 C.F.R. § 50.7 by lodging the proposed Consent Decree and publishing it in the Federal Register. The United States continues to believe that the Consent Decree is fair, reasonable, and consistent with environmental goals, and, therefore, in the public interest.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sign the Consent Decree and enter it as a final judgment. Global, pursuant to the Consent Decree,

consents to entry as well.  *See* Consent Decree ¶ 36, at 12.

        Respectfully Submitted,

        THOMAS L. SANSONETTI
        Assistant Attorney General
        Environment and Natural Resources Division

        s/ Scott Bauer
        SCOTT D. BAUER
        Trial Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 7611
        Ben Franklin Station
        Washington, DC  20044-7611
        (202) 514-4133

        MICHAEL J. SULLIVAN
        United States Attorney

        GEORGE B. HENDERSON, II
        Assistant U.S. Attorney
        United States Courthouse
        1 Courthouse Way
        Suite 9200
        Boston, MA 02210
        (617) 748-3272

OF COUNSEL:

JOCELYN L. ADAIR
Senior Attorney
Air Enforcement Division
Office of Regulatory Enforcement
U. S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
(202) 564-1011